B. COLLINS v. HIS CREDITORS.—ON A REHEARING.

Answers by one co-defendant on propounded interrogatories cannot be taken as against the others.
A party accused of fraud cannot be permitted to testify as a general witness, on the ground of interest.
Where a mortgage is given which, by its tenor, shows a difference in a counter-letter given at the same time, it is an act of prohibited and illegal simulation. A partial simulation involves the absolute nullity of an entire transaction, although portions of it be real.
A mortgage may be given for a debt not yet in existence; or for a debt which might not be realized but in part; or even a sale might be made as security for money advanced, or to be advanced.

APPEAL from the Sixth District Court of New Orleans, *Howell,* J. *Whitaker & Fellows,* attorneys of syndic. *Randall Hunt,* of counsel. *Frank Haynes,* attorney of A. Egan & Co.; *E. T. Fellows,* attorney of John Corlis, appellants. *Budd & Lambert,* for R. Gardere.

*H. M. Spofford, for Collens & Wooldridge.*—This rehearing was granted by this honorable Court upon the following petition, against a judgment delivered by Land, Judge, as the organ of a former Court, but which judgment never became final:

"The undersigned, of counsel for Collens & Wooldridge, most respectfully asks a rehearing of the cause; for, that the decision is based upon the following positions: That the mortgage and the counter-letter, taken together, disclose a case of prohibited and illegal simulation, in that the contract was different from what the act of mortgage alone imported; that even a partial simulation involves the absolute nullity of an entire transaction, although portions of it are real; and that a contract, whose cause is untruly or imperfectly stated in the recorded instrument which embodies it, has a false cause, and is, therefore, radically null throughout, though it may have a genuine and lawful cause."

It is submitted that the opinion of Judge Land necessarily involves one or all of these propositions as its basis; and the object of this application is to show that they are all untenable propositions, unless several cases, not alluded to in the opinion, have been erroneously decided by this Court and its predecessors.

"It clearly appears, from the counter-letter, that the mortgage is not what it purports on its face to be, nor what the parties intended it to be; that is to say, a security for a debt of $9,000 due to the mortgagees; for no such debt was really due to them. The mortgage was not, therefore, a real, but a simulated security, and, like all other simulated contracts which operate to the prejudice of creditors, is null and void.

But $2,000 of the $9,000 have been proved to be really due from the mortgagor to these mortgagees themselves, and the counter-letter (which is certainly evidence for them if it is against them) shows that this very indebtedness for professional fees was to be covered by the notes; moreover, the counter-letter shows that it was in the contemplation of B. Collins to contract other debts immediately in prospect, and such of the other notes as might be found necessary were to be "disposed of for his

use," and the rest of it, if any, restored to him, which was done. He did not then know how much money he would need; as soon as he found out, the mortgage was reduced in proportion to the amount not needed. The Civil Code expressly recognizes a mortgage of this character; and, instead of declaring it a simulation and void because it does not have the support of an existing debt for the full amount of the notes, absolutely fixes the result we contend for as the legal result of just such a contract as Collens & Wooldridge made.

"A mortgage may be given for an obligation which has not risen into existence, as when a man grants a mortgage by way of security for endorsements which another promises to make for him." C. C. 3259. "But the right of mortgage in this case shall only be realized in so far as the promise shall be carried into effect by the person making it. The fulfillment of the promise, however, shall impart to the mortgage a retrospective effect to the time of the contract." C. C. 3260.

The promise of future endorsements is only mentioned by way of illustration of a principle. A promise to raise money, or to "dispose of" the notes for the benefit of the mortgagor, as in this case, is just as valid and binding, and gives a retroactive effect to this mortgage for $2,000 more (viz: for the fees paid by Collens & Wooldridge to Randall Hunt, and to A. P. Field), making $4,000, the entire amount that is claimed, and all that was allowed by the judgment appealed from. Article 3260 does not even require a reduction of the recorded mortgage to the real sum subsequently found due, but it is "realized" and subsists for whatever becomes due. It is impossible for such a contract to be treated as null and void ab initio, merely because the whole sum for which the mortgage was made was not due and owing at the date of the mortgage.

But the opinion would seem to imply that the act of mortgage itself should expressly declare that it is to secure future advances or debts, under pain of nullity. The contrary has been positively decided in numerous cases. In *Brander* v. *Bowmar & Abercrombie*, 16 L. 370, for instance, Bowmar executed a mortgage in favor of Abercrombie, for $10,135, evidenced by a promissory note, and nothing said in the act about security for endorsements. At the date of the act he really owed Abercrombie only $1,983 50. But it being shown aliunde that afterwards he became liable for a much larger sum, and that the mortgage was also intended to secure future accruing liabilities, the Supreme Court held it good against third persons injured thereby, up to the real amount which eventually became due.

In *Pickersgill* v. *Brown*, 7 An. 297, it was held, as the reporter's synopsis of the case truly shows, that "mortgages, under the hypothecary system of Louisiana, may be given to secure debts having no legal existence at the date of the mortgage; that it is not essential, in such a mortgage, even with respect to third persons, that it should express on its face that it was given to secure future debts; it may be described as a

security for existing debts, and yet used to protect those which, in the contemplation of the parties, were to be created at a future time."

On the faith of decisions like these, which, so far as the undersigned is aware, have never been contradicted before, the notaries of this city have long been in the habit of taking mortgages in their own favor, from owners of property who desire to raise money on it, with notes payable to the owner's order or the notary's order, when no debt whatever exists. The notaries or broker, acting for the owner, then place such notes where they can, among lenders of money who know all the circumstances, and return such of the notes as they cannot place advantageously, sometimes reducing the mortgage (as was done with caution and in good faith, in this case), and sometimes not reducing it at all, although many of the notes may have been destroyed or returned to the maker. Can it be said, in such cases, that, there being no real debt due from the mortgagor to the notary, at that date, "the mortgage was not, therefore, a real, but a simulated security; and, like all other simulated contracts which operate to the prejudice of creditors, is null and void?" How differently the Courts of France have treated this matter, as quoted with approbation, in *Pickersgill* v. *Brown*, 7 An. p. 310. "Considering that, in the consideration of contracts, the common intention of the parties must be sought for; that, from the circumstances of the case, and the manner in which the parties executed their contract, the conviction was irresistible that, although Perrichon acknowledged himself to be a debtor purely and simply to Cortaz & Co., in a sum of 40,000 francs, which he promised to pay at an early day, yet the parties really understood that the obligation was to serve as a mortgage security, not only for what was then due, but for what might eventually be due in account current; that the manner in which the account current was kept was in accordance with this understanding; that such an agreement was not a just subject of complaint, in a legal aspect, because parties may adopt such forms as suit them to protect their agreements, even when such forms seem to conflict with them, provided their real intentions can be appreciated, and they do nothing that offends the laws, good morals and public order; and that, as regards third persons, they suffered no injury by such an agreement, because, persons dealing with Perrichon, after the contract of 1839, having notice of the registry of the notarial act, were thus informed of all they had an interest to know, to wit: that the real estate of Perrichon was affected by an incumbrance of 40,000 francs," etc., etc.

These cases show that it is erroneous to say, under the Napoleon and Louisiana Codes, that, because the real contract is different from what the recorded act by itself imports, therefore, there is a case of illicit simulation; or that a mortgage having in part a real consideration, is null and void for the whole, if the entire debt originally acknowledged be not due at the time, or even should never become due.

It only remains to treat briefly of the third proposition, which would

appear to be involved in the opinion under consideration, to wit: That a contract, whose cause is untruly or imperfectly stated in the recorded instrument which embodies it, has a false cause, and is, therefore, radically null, though it may really have, in part at least, a genuine and lawful cause.

The cases, it is submitted, have not so interpreted Article 1887 of the Code heretofore. Indeed the Code itself limits the application of Article 1887, and excludes it from being an authority in favor of the judgment under review, although it is the only authority cited in the opinion as bearing against the pretensions of Collens & Wooldridge. "If the cause expressed in the consideration should be one that does not exist, yet, the contract cannot be invalidated, if the party can show a true and sufficient consideration." C. C. 1894, following Article 1887 in the same section. We have abundantly shown a true and sufficient consideration for all the four notes which anybody is seeking to enforce, and which the judgment appealed from allows, to wit: professional fees due mortgagees for their own services, and which are expressly alluded to in the counter-letter, which is evidence for us produced by our adversaries, to the extent of two of the notes for $1000 each; and a disposition of two more notes to reimburse the mortgagees for hiring him the valuable aid of Mr. Randall Hunt and Col. A. P. Field to defend him under the charge of murder, for which he was in prison at the date of the mortgage. This was disposing of them for the use of B. Collins, as required by the counter-letter and by his own directions.

No authority is needed to elucidate a legislative provision so plain as Article 1894 of the Code, which, though referred to in my original brief, must have escaped the attention of the Court. But if any were needed, I should beg to call again to the attention of your Honors the recent case of *Wolf* v. *Wolf*, 12 An. 431, where this language was used: "Neither does it follow, because parties have clothed their contract in one form instead of another, that it will not avail in either. There is no such penalty declared by the law-giver, and the Courts cannot supply it. * * As he may make an absolute donation of his property, saving the rights of parties injured, we see no reason to declare an act void because the vendor has contented himself with a false cause and a fictitious price, instead of inserting the true cause of the contract." C. C. 1894.

LABAUVE, J. On the 6th March, 1858, Bartholomew Collins, the insolvent, covenanted a mortgage in favor of Collens & Wooldridge, for $9,000, divided in nine notes, each for $1,000. On the same day Collens, of the firm of Collens & Wooldridge, executed a counter-letter of the following tenor: "Be it remembered that Bartholomew Collins, having executed the mortgage before Robert T. Kerr, Esq., notary public, and delivered the notes described in the said act of mortgage, dated March 6th, 1858, I hereby declare that said notes (with the exception of so much thereof as will

meet the amount fairly due the firm of C. & W. for professional services) are held by me to be negotiated, or otherwise disposed of, for the use of said B. Collins, and are to be so negotiated or disposed of agreeably to his orders, or to be restored to him at will, after deducting the sum due us on a fair settlement of account as aforesaid. New Orleans, 6th March, 1858. (Signed) T. Wharton Collens, for Collens & Wooldridge."

On the 22d April, 1858, Samuel L. Wooldridge, of the firm of Collens & Wooldridge, and acting for his firm, went before the said notary, Kerr, and producing four of the notes in question, had them cancelled, as well as the said mortgage, to the amount thereof, viz: $4,000. On the 3d July, 1858, Bartholomew Collins made a cessio bonorum, which was accepted by the Judge.

A direct action was brought by the syndic to have the said mortgage annulled, on the ground of fraud and simulation and an attempt to cover the property ; a provisional account having been rendered on the 4th March, 1859, it was opposed by R. Gardere, as holder of two of said mortgage notes, and by said Samuel L. Wooldridge, as also holder of two of said mortgage notes, both oppositions being in amount $4,000. The direct action to annul the mortgage was consolidated with the opposition to the provisional account.

The District Court, after having heard the testimony, sustained the said oppositions of Samuel L. Wooldridge and R. Gardere, so far as that they be placed on the tableau as mortgage creditors in their rank, and paid as such out of the proceeds of the property mortgaged.

From this judgment the creditors, A. Egan & Co. and John Corlis, appealed.

This case is on a rehearing granted upon a decision rendered by our immediate predecessors, declaring the mortgage in question to be null and void, and reversing the judgment appealed from. There are several bills of exception to be disposed of. On the trial of the case interrogatories were propounded to B. Collins, the insolvent, who was made a party in the suit to annul the mortgage. The opponent excepted, so far as other parties were concerned, other than B. Collins himself, on the ground that the answers of one defendant could not be taken as against other co-defendants; the Court sustained the objections as to other parties. The Court decided correctly. The opponents offered J. B. Poindexter to show that the insolvent, in conversation with him, had said that he had fixed upon a certain amount as coming to Collens & Wooldridge, and his counsel, Field and Hunt. The syndic objected; but the Court admitted the testimony. We believe the Court erred, and we will disregard that testimony. The syndic offered A. Bonneval to prove that said Wooldridge had in his hands money collected for said Collins, more than sufficient to meet any advances he may have made to said Collins, and particularly a sum of $3,099, in the suit of *B. Collins* v. *De Moujan, etc.* The opponents objected to said testimony, on the ground that the amount of the judgment of

*Collins* v. *De Moujan*, as received by said Wooldridge, was in controversy in another suit between Levy, syndic, and B. Collins, et als., etc. The Court properly sustained the objections. The said syndic also offered B. Collins, the insolvent, and one of the defendants in the suit, to annul the mortgage, as a general witness, to prove that no such contract was entered into by him with Collens & Wooldridge, as is set forth in their answer to the suit of *Levy, syndic,* v. *B. Collins et als.*, etc. The opponents objected to said witness, on the grounds that he was accused of fraud with them ; that he had an interest in defeating the debt, etc. The Court sustained the objections and rejected the testimony. We believe the Court did not err. The said syndic also offered in evidence an act of sale by Wooldridge to Kenny Mitchell, as showing with greater certainty, a matter testified to by Mitchell, as to the purchase of said property, etc. The opponents objected to the document, on the grounds that those matters were in controversy between the same parties, as evidenced by the petition filed herein, etc. The Court sustained the objections. We think the Court did not err.

This case involves but one main question on the merits, and that is purely of law. The Court which tried the case below was satisfied that the mortgage was real, and valid in law, and proved, to the amount of $4,000, represented by four notes held by the opponents. We are of opinion that our learned brother did not err.

It is contended in this Court (and so our predecessors had decided in this case) that the mortgage and the counter-letter, taken together, disclose a case of prohibited and illegal simulation, in this, that the contract was different from what the act of the mortgage alone imparted ; that even a partial simulation involves the absolute nullity of an entire transaction, although portions of it are real. This counter-letter was deposited in the hands of the notary, and it was produced and brought into Court by him on a subpena duces tecum, issued at the instance of the creditors opposing this mortgage. This counter-letter shows what was the intention of the parties, and it was carried out. On the 22d April, 1858, four of the notes were returned and cancelled, as well as the mortgage to that amount. It is fair to presume that the parties had had some settlement and understanding about that business; and, that the notes now brought against the insolvency, are held for value received. This was two months and a half before the failure of Collins.

A mortgage may be given for a debt not yet in existence, or for a debt which might not be realized but in part, or even a sale might be made as security for money advanced or to be advanced. C. C. Articles 3259, 3260, 1894. *Wolf* v. *Wolf*, 12 An. 529. We see nothing immoral or illegal in this transaction.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed ; and that the appellants pay the costs of this appeal, each for one-half.

HOWELL, J., recused.