## Case No. 18,138.

### In re YORK et al.

[3 N. B. R. 661 (Quarto, 163).] [1]

District Court, D. Louisiana.   Jan. 11, 1870.

MORTGAGE FOR ADVANCES—SUPPLIES FOR PLANTA-
TION—DATE OF MORTGAGE.

1. Where a valid mortgage of a plantation was made in Louisiana to secure advances of cash and supplies, to be made from time to time, for the purpose of working it, not to exceed in amount twenty-five thousand dollars, to be reimbursed out of its products; and advances were made to exceed fifty thousand dollars, and reimbursements to an amount that, however, left a balance due exceeding twenty-five thousand dollars, *held*, the mortgage is good as security to its full amount, on any balance remaining on advances and reimbursements under it, and is not extinguished by the reimbursement of the first twenty-five thousand dollars.

2. A mortgage given to secure the payment of four promissory notes, made to raise means to work a plantation, is valid, and, upon the negotiation of the notes, relates back to the date of execution.

DURELL, District Judge. In the month of February, 1869, two plantations, surrendered by the bankrupts, and designated as "White Hall" and "Home Place," were sold free of incumbrances, under the order of this court. In March, 1869, a rule was taken by the assignee calling upon the creditors of the bankrupts to show cause why said sales should not be confirmed, and the proceeds thereof distributed in accordance with the priority and rank of the mortgages, privileges, and liens existing at the date of the surrender. Upon the return of this rule, W. A. Ober, the purchaser at the sales, demanded a confirmation of the same; and the commercial firm of Ober, Atwater & Co. asserted themselves to be creditors of the bankrupts, secured by mortgage, first, in priority and rank, upon the property sold. The claims of Ober, Atwater & Co. were disputed by others of the creditors of the bankrupts, and the whole matter was referred to a commissioner, with instructions to inquire into the regularity of the sales, which certain creditors also impunged, and to determine the order and rank of the mortgages resting upon the respective plantations. In June last the commissioner made a voluminous report upon the law and facts of the case, confirming the sales, and sustaining the validity and priority in rank of the mortgages held by Ober, Atwater & Co. To the confirmation of this report exceptions were taken, and, subsequently, fully argued by counsel representing all parties in interest. The sales having been adjudged to be valid at a previous day of this term, it only remains for the court to determine the relative rank of the respective mortgages.

The mortgages on the respective plantations being distinct, will be separately considered.

First. As to the mortgages upon "White Hall." On the 17th of January, 1866, York & Hoover made an authentic act of mortgage, in which it is recited "that being in want of cash and supplies to carry on the cultivation of that certain plantation, known as 'White Hall,' and also the 'Home Place,' belonging to them, they have applied to Ober, Atwater & Co. for such advances of cash and supplies, who have agreed to advance the same, at such times, and in such manner as the same may be needed, to an amount not to exceed twenty-five thousand dollars, on the terms and conditions hereafter expressed." The conditions on the part of York & Hoover to be performed, were, to cultivate the plantations with diligence; to apply the advances to the use of the plantations; and upon the crops being gathered, to consign the same to the mortgagees for sale, who, out of the proceeds thereof, were to repay to themselves "all such advances as they shall at such time have made," together with commissions, costs of sale, interest, etc. Ober, Atwater & Co. agreed to make the advances, and, to represent the same, received from York & Hoover a negotiable note in the sum of twenty-five thousand dollars, payable on the 1st day of January, 1867. After these recitals, the act proceeds to declare "that to secure payment of all said advances which the said Ober, Atwater & Co. may make as aforesaid, and such sums of money as may be due to them as aforesaid, under this contract, the said York & Hoover specially mortgage the 'White Hall' plantation." The act finally declares that all accounts accruing under it shall be due and mature on the 1st January, 1867. This mortgage was executed and inscribed before the execution and inscription of the mortgage given to Wright & Allen, under which last mortgage the opposing creditors claim.

The only question to be determined, then, is, whether Ober, Atwater & Co. have, within the terms of this mortgage, produced a valid, operative, and existing obligation. The testimony shows that during the year 1866, advances were made to the two plantations to an amount exceeding fifty-three thousand dollars; that during the year, payments were made exceeding twenty-five thousand dollars; and that in January, 1867, a balance existed, including commissions, of over twenty-seven thousand dollars. The opponents contend that the contract of Ober, Atwater & Co. was fulfilled when advances had been made to the amount of twenty-five thousand dollars; and that this mortgage was extinguished when they had received a like sum from the crops of the plantation. Ober, Atwater & Co. maintain, on the contrary, that their mortgage secured whatever might remain in January, 1867, as a balance on the account of advances made to them. The language of the act of mortgage, the character of the instrument, the conduct of the parties to the contract, and the judicial decisions, support this conclusion of the mortgagees. The mortgage was executed to secure advances to be made during the year; the settlement of accounts

[1] [Reprinted by permission.]

was postponed until the expiration of the year; and whatever advances were made the mortgage was designed to stand as a security for to the extent of twenty-five thousand dollars.

The case of Lawrence v. Tucker, 23 How. [64 U. S.] 15, is strictly analogous to the one now before the court. In that case a note was given for the sum of five thousand five hundred dollars, contemporaneous with the mortgage as a debit; but in truth, as a collateral security for advances made. The mortgage was given to secure such advances of money as had been, or might be made, within two years, to the mortgagors, not to exceed six thousand dollars in addition to the note, making a sum total of eleven thousand five hundred dollars. It appears from the report, that within the two years, from fifty thousand to one hundred thousand dollars were advanced; and that, at the expiration of the term, nearly ten thousand dollars were due on said advances from the mortgagors to the mortgagee. The objections having been made in that case, as in the one now before the court, that the mortgage was not given to secure a balance on the settlement of accounts to the amount stipulated in the mortgage, but only to secure first advances to the amount of the note, and six thousand dollars —to wit, eleven thousand five hundred dollars; and that the payment of that sum by the mortgagors to the mortgagee, in the course of their transactions during the term of the two years, was a ratification of the mortgage; the supreme court said: "Our object has been to show that the parties to the original transaction understood it alike, and acted upon it accordingly; that there never was a difference of opinion between them as to the character of the mortgage and its purposes; and that it was intended to be a security for, and a lien upon, the property mortgaged, for future advances to the extent of the sum provided for in it. * * * We consider it to be a mortgage for future advances; that they were subsequently made in conformity with its provisions; and that the proofs that they were so, were rightfully received by the court below to substantiate them."

In the case now before the court, similar proofs were submitted. The accounts current, the act of liquidation, the testimony of the parties to these accounts, all show an intent corresponding to that which the mortgage itself suggests.

The case of Lawrence v. Tucker [supra], in the supreme court of the United States, is supported by other decisions of that court, cited in the opinion delivered in the case, and also by the decision of the supreme court of Louisiana in Pickersgill v. Brown, 7 La. Ann. 298, decided under the regime of the Code of the state. Therein it was determined that a mortgage for advances to be made from time to time, during a definite period, for a specific amount, is a security for the eventual balance in account. That it is not affected by the

fluctuations in the account at different periods in the time limited; and that the inscribed mortgage, declaring the nature of the transactions, the time within which they are to accrue, and the limit to which the mortgage debit may reach, afford a sufficient notice to all parties, so as to place them on their guard. These doctrines have been maintained in the French courts under the regime of the Code Napoleon, many of whose decisions are cited in the very able and learned report of the commissioner; and they are fully recognized in the highest courts of other states of the Union. Vide 5 Metc. (Mass.) 268.

Second. As to the mortgages upon the "Home Place." The mortgages upon the "Home Place" plantation bear date of the same day—to wit, January 20, 1866. One was made in favor of Alexander Allen, acknowledging a debit for supplies furnished the plantation; and to put said debit in a negotiable form, four notes were drawn in the sum of five thousand dollars each; payable to the makers, York & Hoover, indorsed in blank, bearing interest from date, and maturing in the following fall and winter. These notes are recited in the mortgage, and, thus secured, are payable to any future holder thereof. Another or second mortgage, bearing even date with the first, but inscribed one day later, was given to Messrs. Wright & Allen, factors and merchants, who had become liable for the mortgagors in large sums, as securities, as indorsers, and otherwise; which sums the mortgagors wished to discharge. For that purpose they made numerous notes, recited in the mortgage and negotiable in form, which were put into the hands of Wright & Allen, to be used solely in the discharge of their said liabilities, incurred by indorsements or otherwise. Wright & Allen, the factors and merchants of York & Hoover, had been consulted by them, in reference to their mutual business relations; and it was by the advice of Wright & Allen that York & Hoover made the mortgage first above described, and first inscribed. It was made to enable York & Hoover to raise money to work their plantations, "White Hall" and "Home Place." The notes were made to be negotiated in the market, and the mortgage was made to give additional credit to the notes. They were all negotiated for value before maturity, two of them in March, and two in August of 1866.

The opposing creditors contend that these notes are not protected by the mortgage. That at the date of the inscription there had been no negotiation of the notes, and that, therefore, there was no debt due; and that none was created until several months subsequent thereto. But the mortgagors' purpose was to raise money by a loan, and, preparatory thereto, these notes were made, a mortgage declaring the existence of a debt executed and inscribed, and both mortgage and notes placed in the hands of an agent for negotiation. It may be true that the mortgage and the notes were inchoate secu-

rities, framed to accomplish a particular object, and that a negotiation by the mortgagor or his agent was necessary to their complete validity. It may be that, until then, there was no creditor, no debtor, no right of action, nor perfect obligation; but the agent, from the date of the inscription, was in possession of all the means to the making of a perfect contract, by the delivery of the securities to a bona fide holder. These securities, by such a delivery, became operative from their date, and are binding, ab initio, upon the mortgagor. The Civil Code of Louisiana (article 3259) provides "that a mortgage may be given for an obligation which has not yet risen into existence;" and cites as an illustration, "as when a man grants a mortgage by way of security for indorsements which another promises to make for him." Id. A more apt illustration, and one that arises more frequently in practice is, "as where a man makes notes negotiable by delivery, and secures them by an inscribed mortgage, and places them in the hands of a broker for sale for his account." If the debtor may grant a mortgage to secure notes that have not been negotiated, but which he contemplates negotiating, with a friend's indorsement, why may he not, in the same manner, provide for the credit and payment of his own notes, prepared for negotiation, when the principle is admitted that a mortgage can be given for an obligation which is only proposed, or which has not risen into existence? The intrinsic validity of the mortgage under consideration is admitted. Article 3260, of the Code, declares the operative force of such a mortgage. "The right of mortgage shall only be realized in so far as the promise shall be carried into effect, by the person making the promise to indorse, or, as in the case supposed, by the actual and bona fide transfer of the notes. But the fulfillment of the promise to indorse," continues the article quoted, or, as in the case supposed, the negotiation of the notes of the mortgagors, "shall impart to the mortgage an effect relating back to the date of the mortgage."

The French authorities support the conclusion that the mortgage takes effect from the date of the inscription, and not from the date of the realization of the loan. The French judicial decisions show a clearer and deeper knowledge of the necessities of a commercial age and people than do the theories of the late illustrious president of the court of cassation, and of others of their great commentators, which they overrule.

In Telemez v. Bonifay, Sir. & Vill. (1842) pt. 2, p. 520, the court of cassation say: "L'hypothèque stipulée pour sureté d'un crédit ouvert prend rang du jour de son inscription pour toutes les sommes fournies en vertu de ce crédit, et même pour celles qui n'ont été fournies que postérieurement aux inscriptions prises par d'autres créanciers. Il y a, dès le jour même du contrat, obligation réciproque: obligation de la part de celui qui ouvre le crédit, de faire les avances promises; de la part du crédité, de restituer les sommes qu'il prendra en vertu du crédit. Si cette obligation est conditionnelle, elle n'en est pas moins une obligation à laquelle peut se rattacher une hypothèque. La condition accomplie a un effet rétroactif au jour auquel l'engagement a été contracté, et cette hypothèque prise en vertu du crédit ouvert prend rang du jour de son inscription, et non du jour de la réalisation du crédit, et prime en conséquence les hypothèques inscrites intermédiairement entre le jour du contrat portant ouverture du crédit et hypothèque, et celui ou le crédit a pu se réaliser. Il n'y a aucun préjudice des droits des tiers, puisque par l'inscription les créanciers sont suffisamment avertis que si la condition s'accomplit, c'est-à-dire si le crédit se réalise, l'hypothèque prendra rang du jour de son inscription." The same doctrine is again declared by the same court in the same volume (pt. 2, p. 541) in Hutte v. Seignan. See, also, Hilderbrand v. Courcelles, Sir. & Vill. (1848) pt. 2, p. 729, and note, in which it is stated that this decision is in accordance with uniform jurisprudence, and the opinion of the majority of the authors, though the contrary had been maintained by Merlin, Toullier, and Troplong. The supreme court of Louisiana also shows a decided preference for this doctrine. 7 La. Ann. 297; 16 La. 370; 18 La. Ann. 235. And a corresponding disposition is exhibted in the American chancery reports. 7 Conn. 387; 24 Conn. 290; 4 Johns. Ch. 65, 74; 2 Cow. 246. That the mortgage for the four notes, the mortgage first inscribed, is not a nullity, but a valid security for the notes in the hands of holders for value, has been shown. It is to be inferred that Wright & Allen, the persons named as mortgagees in the mortgage of the same date, bearing upon the same property, but last inscribed, had notice of the mortgage for the four notes and consented to its prior inscription in order to give to it the priority of lien thence arising.

There is no evidence showing at what time the holders of the notes described in the mortgage last inscribed became parties in interest; and we find no evidence that any party attempted to restrain the negotiation of the four notes secured by the first. During the year 1867, Ober, Atwater & Co. continued to furnish supplies and to make advances to York & Hoover. Upon the accounts as stated, it appears that there is due to them more than the amount of the notes embraced in the mortgage. The payments, from whatever source derived, do not cover the balances due. The sum bid for the "Home Place" was nineteen thousand eight hundred dollars, and for "White Hall" the proceeds amount to twenty-two thousand dollars. The expenses and costs of the sales must be deducted from these

funds, together with such expenses of the estate as are commonly chargeable against it.

Decretal order: This cause came on to be heard on the pleadings and proofs and arguments of counsel for the various creditors, and thereupon it is declared by the court—First, that the commercial firm of Ober, Atwater & Co. have established their right to the mortgages and mortgage debts specified in the two mortgages filed by them, one on the "White Hall" plantation, dated 17th of January, 1866, and inscribed the 9th of February, 1866, for the security of advances for twenty-five thousand dollars, to be due 1st of January, 1867, and which sum was advanced. And one upon the "Home Place" plantation, executed the 20th of January, 1866, and inscribed the 16th of February, 1866, to secure the payment of four notes therein described. And that these mortgages have a prior lien upon the proceeds of the sales of the said plantations, and must be paid in preference to any of the mortgages which have been set up in the oppositions of the creditors of York & Hoover. Second. It is further ordered, decreed, and adjudged, that the moneys arising from the sales of the said "White Hall" and "Home Place" plantations be paid to the said Ober, Atwater & Co. upon their several mortgages as aforesaid, to the extent of the moneys applicable, and that each mortgage be credited with the money derived from the property declared in it. Third. The assignee is directed to charge the said funds in his hands with the costs and expenses of the sale, and orders relative thereto, and their proportion of the general expenses of the estate. Fourth. That the costs of the litigation upon the regularity of the sale, and upon the oppositions to the rule by the assignee, be paid by the opposing creditors.

[For hearing on a petition to review the above proceedings, see Case No. 18,139. See, also, Id. 6,441.]