### No. 1940
### Second Circuit Appeal

---

### D. C. NICHOLS v. WILLIAM BELL AND E. M. RACHAL

---

(March 30, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Execution—Par. 74, 76.**

Where the constable did not and could not take corporeal possession of an undivided half interest in the land and the seizure consequently was effected merely by notifying the defendant in execution that the seizure had been made, that the sort of seizure could not be abandoned by the constable against the protest of the judgment creditor.

2. **Louisiana Digest—Execution—Par. 175, 70.**

It is well settled that, having made a seizure, the sheriff was not bound to return the writ unless required by the plaintiff, but might proceed to sell under the seizure notwithstanding the expiration of the return of the writ, the failure to sell not having been attributed to the plaintiff.

3. **Louisiana Digest—Sales—Par. 205, 207.**

If knowledge of a deed which actually conveys land is not equivalent to registry then for the greater reason knowledge of a deed that does not convey but was merely intended to do so is not equivalent.

4. **Louisiana Digest—Fraud—Par. 6, 10.**

Where the corrective deed had to be obtained in any event, whether a partition was amicably come to or not, fraud cannot be ascribed to a party to the suit because he tried to arrive at an agreement for an amicable partition.

5. **Louisiana Digest—Costs and Fees—Par. 61.**

In view of Article 890 of the Code of Practice a motion to amend asking for damages, filed by defendant on the day set for judgment, is filed too late.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Natchitoches. Hon. J. W. Jones, Jr., Judge.

This is an injunction suit which involves the right of the defendant, Bell, to sell, under execution, an undivided half interest in forty acres of land seized as the property of his judgment debtor, Kerry.

There was judgment for defendant dissolving the injunction.

Plaintiff appealed.

Judgment affirmed.

J. D. Rusca, of Natchitoches, attorney for plaintiff, appellant.

M. L. Dismukes, of Natchitoches, attorney for defendant, appellee.

CARVER, J. This suit involves the right of the defendant Bell to sell, under execution, an undivided half interest in forty acres of land seized as the property of his judgment debtor, Kerry.

The facts leading up to the suit are as follows:

On October 24, 1921, Kerry sold to plaintiff an undivided half interest in one hundred and twenty acres of land intending to include the half interest he owned in the SW¼ of SW¼ of Section 12 Township 5 North Range 6 West but, by error, described it as the SE¼ of SW¼ of that Section.

On November 21, 1921, Bell brought suit in the Justice-of-the-Peace's court against Kerry for $100.00. The Justice-of-the-Peace decided against Bell and he appealed to the District Court which reversed the judgment of the lower court and gave Bell judgment for $55.00; which judgment was rendered on March 1, 1922, and recorded the same day in the mortgage book of Natchitoches parish.

On March 8, 1922, the Justice-of-the-Peace issued an execution on this judgment and the Constable seized a half interest in SW¼ of SW¼ of Section 12 Township 5 North Range 6 West; serving on Kerry notice of the seizure in writing.

The writ under which the seizure was made directed the Constable to make return in thirty days.

The Constable advertised the property to be sold on April 29, 1922, but before the day of sale declared he had released the seizure and announced his attention of not making the sale.

Thereupon Bell brought a mandamus suit against the Constable, seeking to compel him to proceed with the sale. In this mandamus suit he alleged that he had given bond for $500.00 to indemnify the Constable in any damage he might suffer by reason of his proceeding with the sale.

Judgment was rendered making the mandamus peremptory and ordering Rachal, the Constable, to proceed with the sale; this judgment being signed April 15, 1922.

The writ, issued March 8, 1922, brought up with the record, does not show that any return was made thereon, and we gather from the averments of the petition in the mandamus suit, to which this writ was annexed, that it was forwarded after the seizure was made to the Sheriff with instructions to turn same over to Bell's attorney. Since the filing of the mandamus suit the writ has evidently remained in the office of the Clerk of the District Court of Natchitoches parish as a part of the archives of his office.

On April 17, 1922, Bell's attorney filed up two blank writs of fi. fa., leaving one of them blank and tyewriting the Justice's name in the other and writing thereon in the left hand corner the words "A true copy". He gave this to the Constable, directing him to get the Justice to sign the one left unsigned and for him, as Constable, to sign under the words "A true copy" on the other one. The Justice did sign the original and the Constable certified the copy.

On this original the Constable made return on the 23rd of May, 1922, stating that he had received the within alias writ on the 17th day of April, 1922, the original having issued on March 8, 1922, and not having sold the property seized makes this return, retaining the copy in his hands.

In January, 1922, plaintiff brought suit against Bell's wife for partition of the land a half interest in which he had bought from Kerry, thinking that Bell's wife owned the whole of the other half

interest. Bell was joined to authorize his wife.

Within a few days after this suit was filed Bell brought the papers to Natchitoches and gave them to his attorney, Mr. Dismukes. Dismukes invited plaintiff's attorney, Mr. Rusca, to come to his office where a conference was had between Bell, Dismukes and Rusca. During this conference Rusca's attention was called to the fact that the petition in the partition suit did not describe the land correctly. He was also told that Mrs. Bell did not own the whole of the other half interest but that Bell himself owned part of that interest. He was also told or inferred that the description in his client's deed from Kerry as well as the description in the partition suit was wrong. Rusca suggested that, in the interest of saving costs, therby benefiting all parties, an effort be made to partition the land amicably, which Bell agreed to do; Rusca stating that he would take no further steps in the partition suit.

It seems that Bell did not himself know of the error in the deed until the day of the conference, but whether before or after the conference the record does not show.

Rusca wrote to Nichols informing him of the conference and suggesting a meeting with Bell in an effort to partition the property amicably. Bell and Nichols met but no agreement was reached, Bell declining to either buy or sell and declining to partition except in a particular way to which Nichols would not agree. The date of this meeting is not shown by the record, except that it was before the trial in the District Court of the suit of Bell against Kerry. Perhaps it was as early as the latter part of January, 1922.

Dismukes says that shortly after the conference in his office Bell reported to him that it was impossible for him and Nichols to agree and that he so informed Mr. Rusca about the same time.

On March 16, 1922, a corrective deed was passed between Kerry and Nichols, stating that the intention of the October sale was to sell a half interest in the SW¼ of SW¼ of Section 12 instead of SE¼ of SW¼. This deed was filed for record March 18, 1922.

Pursuant to the mandamus ordering him to do so, the Constable readvertised the property. He had not made any other seizure of it or served any notice of seizure except the seizure and notice made and given under the writ of March 8, 1922.

Upon his so readvertising it, plaintiff brought this suit to enjoin the sale, alleging that there was no valid seizure of the property at that time, the Constable having released the seizure made under the writ of March 8, 1922 and that writ having expired thirty days after its date, and further, that Bell was guilty of fraud, the alleged fraud consisting of inducing plaintiff to delay getting a correction deed from Kerry by the pretence that he, Bell, would endeavor to come to an agreement for an amicable partition of the land with Nichols, pending which plaintiff's attorney was to take no action in the partition suit.

Plaintiff further alleged that Bell could take no advantage of the error in the deed from Kerry to Nichols because he knew of such error and that Kerry's intention was to sell his half interest in the SW¼ of SW¼.

Defendant Bell answered the injunction suit, denying the alleged fraud and pleading reliance upon the public records.

Both plaintiff and defendant Bell claimed damages.

The District Judge rendered judgment dissolving the injunction and held that Bell had a right to sell the land under his judgment.

Plaintiff appealed, and in this court Bell asks amendment of the judgment so as to give him damages.

Plaintiff relies for a reversal on the following points.

### I.

That the seizure made by the Constable under the writ of March 8. 1922, was released by him and no new seizure was ever made either under that writ or the writ of April 17, and that not having the property under seizure the Constable could not sell it.

### II.

That if the release made by the Constable was not effective, the writ itself expired thirty days after its issuance, namely, April 8, 1922, and this released the seizure.

### III.

That the original deed from Kerry to Nichols was sufficient to divest Kerry of his title *quo ad* Bell because Bell knew it was the intention of Nichols to buy and Kerry to sell the interest in question.

### IV.

That Bell's conduct in pretending to try to make an amicable partition and thus getting delay so that he could get and record his judgment was for the purpose of inducing plaintiff to defer getting a corrective deed and therefore a fraud on plaintiff's rights:

We do think that the act of the Constable in declaring the seizure released and refusing to go ahead with the sale, over the protest of the judgment creditor, did amount to a release in this case. Perhaps where an officer seizes property by taking corporeal possession of the same a release of such a seizure might be effected by redelivery of the property corporeally to the defendant in execution, especially as regards intervening rights of third persons. In this case, though, the Constable did not

and could not take corporeal possession of an undivided half interest in the land and the seizure consequently was effected merely by notifying the defendant in execution that the seizure had been made; that sort of seizure could not be abandoned by the Constable against the protest of the judgment creditor.

Plaintiff's counsel, on this branch of the case, relies on the case of State, ex rel. etc., vs. Fontenot, 152 La. 912, 94 South. 441.

In our opinion this decision does not sustain the claim.

In that case the sheriff was willing to hold the seizure if the judgment creditor gave an indemnity bond. Here the judgment creditor offered an indemnity bond. There the Sheriff knew of his own knowledge that Dalby owned the property, he having, himself, as Sheriff, in a previous mortgage foreclosure suit, seized and sold and delivered it to Dalby who had been in possession of it some considerable length of time; seeing that the adjudication at Sheriff's sale itself vests title and that the Sheriff's deed is merely evidence of it; the Sheriff who made the sale and gave an erroneous deed but could perhaps thereafter correct his own error. It further appeared, according to the Sheriff's allegation, that the relator had recognized the sale to Dalby by suing to have it set aside on the alleged ground of fraud. In this case, though, the Constable had nothing to do with the sale from Kerry to Nichols and had no right, if he did know it, to decide that a sale which was intended to but did not describe certain land had the effect of transferring the property. Further, the court in that case did not hold that the error could be corrected. (Though we think under the circumstances, being a Sheriff's sale where the adjudication vests title, it could be.) The court remanded the case to try the question whether a judgment setting the question of issue

had been rendered and become final. If so, of course the judgment was res judicata and right or wrong had to stand. In that case the exercise of discretion by the Sheriff was proper, but we think it was not by the Constable in this case and that his declaration that the seizure was released over the protest of the judgment creditor was ineffective to release it.

### 2.

Our first impression was that the expiration of a writ of fi. fa. without returning it into court and keeping a copy for future proceedings operated a release of the seizure, but we find a long line of jurisprudence settling the matter the other way.

In Aubrey vs. Buhler, 3 Mar. (N. S.) 493, Justice Porter in a well reasoned opinion, decided as follows:

"If a levy be made before the return day, a sale may be made after."

In Rowley vs. Kemp, 2 La. Ann. 361, the court says:

"It is well settled that having made a seizure the sheriff was not bound to return the writ unless required by the plaintiff, but might proceed to sell under the seizure notwithstanding the expiration of the return day of the writ, the failure to sell not having been attributable to the plaintiff."

Citing authorities.

In Dorsey vs. Carrollton Bank, 5 La. Ann. 237, the court approvingly cites the above quotation from Rowley vs. Kemp.

In Widow Briant vs. Hebert, 30 La. Ann. 1128, the court reaffirms the doctrine of Rowley vs. Kemp, which it cites approvingly.

In the Briant case, the writ expired on August 8th. On the 11th of August it was returned to the Clerk's office, the sheriff having kept a copy.

The Briant case is expressly reaffirmed in the case of Smith vs. Sanders-Lenahan Lumber Co., 139 La. 902, 72 South. 445.

### 3.

We do not think Bell's knowledge that Kerry intended to sell the land made that intention effective as against him to divest Kerry of the property and place it beyond reach of his execution.

Since McDuffie vs. Walker, 125 La. 154, 51 South. 100, the court has not, we believe, varied from the principle that actual knowledge in matters of real estate is not equivalent to registry and that parties have a right to rely on the public records in dealing with real estate.

The case of Van Arsdale vs. Miller, 156 La. 1, 99 South. 889, cited by plaintiff's counsel, is not opposed to this view. There the party pleading want of registry was not only a member of the firm who gave the counter-letter to Van Arsdale but was the very member of the firm who wrote, executed and signed it. Being a party to the act, registry was not as to him necessary. But Bell was not a party to the deed from Kerry to Nichols.

If knowledge of a deed which actually conveys land is not equivalent to registry then for the greater reason knowledge of a deed that does not convey but was merely intended to do so is not equivalent.

### 4.

We do not think the proof sustains the charge of fraud. Neither Bell nor Dismukes made any promise to Rusca, except that Bell was to try to arrive at an agreement with Nichols for an amicable partition of the land.

Plaintiff need not have waited on this partition to obtain a corrective deed. Bell was not a necessary party to the corrective deed nor was Kerry a necessary party to the partition, except that the corrective deed had to be made before this part of the land could be partitioned.

The corrective deed had to be obtained in any event, whether a partition was amicably come to or not.

Moreover, negotiations for an amicable partition were broken off certainly before March 1, 1922, and probably as early as the latter part of January. Nichols knew there was no further hope of an amicable partition and Dismukes says he so notified Nichols' attorney.

The corrective deed was not obtained until March 16th.

Nichols knew that Bell was suing Kerry for a money judgment.

Bell or his attorney first made disclosure of the error to plaintiff's attorney in the conference held in Dismukes' office some time before January, 1921.

### THE CLAIM FOR DAMAGES.

We hardly think this a case for the allowance of damages, but even if we did we could not allow them. Defendant did not file his motion to amend until March 4, 1925, the day set for the argument.

Article 890 of the Code of Practice declares:

"* * * but if he (meaning the appellee) demand a reversal of any part or damages against the appellant he shall file his answer at least three days before that fixed for the argument, otherwise it shall not be received."

The judgment of the lower court is affirmed.