LAND, J.
 

 The Hortman-Salmen Company, plaintiff and appellee, as mortgage creditor, foreclosed, under executory process, on certain property owned by Walter William White, the mortgagor.
 

 , After the sale, the civil sheriff took a rule against all parties having privileges recorded against the property to show cause why the inscriptions should not be canceled and the proceeds of sale distributed to those entitled thereto.
 

 The appellants, furnishers of material, appeared, and, in answer to the rule, contended that their respective liens, as recorded, primed the claim of the seizing mortgage creditor, whose mortgage they assert is not a bona fide mortgage, as contemplated by section 12 of Act No. 298 of the year 1926.
 

 Appellants further contend that plaintiff’s mortgage is a conventional one and is not embraced within the provisions of the section cited.
 

 The lower court decided that the mortgage of Hortman-Salmen Company primed the liens and privileges of the claimants herein, and gave judgment accordingly. These claimants have appealed.
 

 The two eases have been consolidated, as the issues involved are similar in each case.
 

 ■ In suit No. 29631, the foreclosure is under a mortgage note for $20,800 of date August 1, 1927. This note is executed by Walter William White on two lots of ground, with the improvements, situated in the Seventh district of .New Orleans in square No. 119, and is made payable to the order of Hortman-Salmen Company, plaintiff, on demand. The mortgage to secure this note was recorded in the mortgage office of the parish of Orleans on August 1, 1927.
 

 In suit No. 29712, the foreclosure is under a mortgage note for $15,800. This note is executed by Walter William White on a lot and a half, with improvements, in the Sixth district of New Orleans in square No. 2 of Friburg, and is made payable to the order of Hortman-Salmen Company, plaintiff, on demand. The mortgage to secure this note is of date July 26, 1928, and was recorded in the mortgage office of the parish of Orleans on July 28, 1928.
 

 The evidence discloses that the Hortman-Salmen Company was desirous of furnishing all of the lumber and building materials necessary for the erection of the improvements on these lots, and that, in the agreement between the parties, it was stipulated that a certain part of the cash to be advanced was to be paid for the purchase of the lots, upon which the buildings were to be erected, and the balance in stipulated payments as the work progressed.
 

 In each of these cases, a part of the loan was advanced to White to enable him to purchase the lots, and, after acquiring the property, he executed the mortgages in favor of the Hortman-Salmen Company for the amount of the respective loans.
 

 The necessary sum for the purchase of the lot in suit No. 29712, in which the $15,800 loan was made by plaintiff, was advanced to White on July 23, 1928.
 

 It is true that the full amount of the loans was not advanced in money to White by plaintiff in either case at the date of the recordation of the mortgage, although the recorded acts of mortgage state that such advances had been made in fact.
 

 This is unimportant, however, in our opin
 
 *1062
 
 ion, as it is well settled, as stated in the syllabus of Pickersgill v. Brown, 7 La. Ann. 297, that: , “Mortgages, under the hypothecary system of Louisiana, may be given to secure debts having no legal existence at the date of the mortgage. It is not essential, in such a mortgage, even with respect to third persons, that it should express on its face, that it was executed to secure future debts. It may be described as a security for "existing debts, and yet used to protect those which, in contemplation of the parties, were to be created at a future time.”
 

 The mortgage in this case is conventional, and it is expressly provided in article 3292 of the Civil Code that: “A mortgage may be given for an obligation which has not yet risen into existence, as when a man grants a mortgage by way of security for indorsements, which another promises to make for him.
 

 “But the right of mortgage, in this case,” as declared in article 3293 of the Civil Code, “shall only be realized in so far as the promise shall be carried into effect, by the person making it. The fulfillment of the promise, however, shall impart to the mortgage a retrospective effect to the time of the contract.” See, also, Matthews, Finley & Co. v. Rutherford, 7 La. Ann. 225, and Morris v. Executors of Cain, 39 La. Ann. 712, 1 So. 797, 2 So. 418.
 

 As stated in Pickersgill v. Brown, 7 La. Ann. 307: “The general definition of mortgage, contained in the 3257th article of our Civil Code, supposes the existence of a principal obligation, of which the mortgage is an accessory, and such is the general theory implied in article 3251. But inasmuch as such a theory, strictly construed, would be inadequate to all the practical purposes of business and the necessities of commerce, the lawgiver, in article 3259, has allowed the conventional mortgage a wider, range, by, declaring, that it ‘may be given for an obligation which has not' yet risen into existence; as when a man grants a mortgage, by way of security, for endorsements which another promises to make for him.’ ”
 

 It must be presumed that the Legislature of 1926, in passing Act No. 298 of that year, was acquainted with the decisions of this court, the textual provisions of the Civil Code, the wider scope .of conventional mortgages, and the practical aid of such mortgages to business and commerce within the state. ¡
 

 The question arises in this case: Did! the Legislature, by section 12 of Act No. 298 of 1926, intend to exclude conventional mortgages from the protection of that act? ¡
 

 The pertinent provisions of section 12 ,of Act No. 298 of 1926 read as follows: “When the owner * * * undertakes the work of construction, improvement, repair, erection, or reconstruction, * * * then any person furnishing service or material or performing any labor on said building or other work may record in the office of the * * * Recorder of Mortgages in the parish in which said work is being done or has been done a copy of his estimate or an affidavit of his claim or any other writing, evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same, by said furnisher of material or said laborer, shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work of improvement, as his interest may appear. * * * Said lien and privilege shall be superior to all other claims
 
 *1064
 
 against the said land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor’s privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if said vendor’s privilege' or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished.”
 

 The lien claimants in this case attempt to limit the b.ona fidp mortgages included in the act only to those mortgages “arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association.”
 

 There are two serious objections to this construction of section 12 of the act.
 

 In the first place, it would create a monopoly in favor of the holders of certain classes of mortgages, and operate as a discrimination, without any reasonable basis, of classification against all lenders of money on conventional mortgages, whether banks or private individuals.
 

 In the second place, it is made clear by section 1 of the act that the phrase, “arising from a sale or arising from a sale and resale to.and from a regularly organized homestead or building and loan association,” modifies “a bona fide vendor’s lien” only, and not “a bona fide mortgage,” which may be a special conventional mortgage, under this section of the act, as well as a special mortgage retained by the vendor, or acquired by a building and loan association.
 

 It is provided in section 1 of the act: “* * * Which lien and privilege, if evidenced as herein provided, shall be superior to all other claims against the said land and improvements
 
 except
 
 taxes and local assessments for public improvements or a
 
 bona fide vendor's privilege whether arising from, a sale, or arising from a sale or resale to and from a regularly organised homestead or building and loan association, or a bona fide mortgage,
 
 provided said mortgage or vendor’s privilege exists and is recorded before the work or labor is begun or any material is furnished.”
 

 Section 12 of the act transposes the provision contained in section 1 by excepting “taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor’s privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association,
 
 if said vendor’s privilege
 
 or mortgage exists and has been duly recorded before the work or labor is begun
 
 or any material
 
 is furnished.”
 

 In our opinion, no change, from the provision contained in section 1 as to “a bona fide mortgage” has been effected in section 12 of the act, by placing the words, “a bona fide mortgage,”
 
 before
 
 instead of after the words, “or a bona fide vendor’s privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association,” since the clause immediately following these last words in section 12 is,
 
 “if said vendor’s privilege'
 
 or mortgage exists and has been duly recorded.”' In other words, section 12 carefully segregates, by a comma, the words, “a bona fide mortgage,” from the words, “or a bona fide vendor’s privilege, whether arising from a sale or arising from a sale and resale,” etc., and then follows these words by the clause,
 
 “if said vendor’s privilege
 
 or mortgage exists and has been duly recorded,” etc., thereby clearly indicating that the clause, “whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association,” was intended to modify “a bon£
 
 *1066
 
 fide vendor’s privilege” and not “a bona fide mortgage,” thereby including a special conventional mortgage, as well as those arising from a sale or from a sale or resale to a homestead association.
 

 The next question for decision is : Were plaintiff’s mortgages bona fide and existing at the time of recordation?
 

 As soon as the mortgage notes were received by the Hortman-Salmen Company, White, the mortgagor, was given credit upon the books of that company for the full amount of each of these loans, and the amounts so credited were advanced in good faith by plaintiff to White, as he had occasion to draw against his account, and until he abandoned the buildings and left the state. Each of these mortgages is a valid and existing mortgage, in the proper legal sense of that term. We find nothing in the record to characterize either of these mortgages as simulated or fraudulent in any particular. Nor does the fact that part of the loan was for materials furnished affect the legal situation of the case in any degree.
 

 Plaintiff company does not claim a privilege as furnisher of material, but stands upon the superior rank of its mortgages, under section 12 of Act No. 29S of 1926, as being bona fide mortgages duly recorded before any material was furnished for any of these buildings.
 

 The lien claimants in these cases do not pretend that any of them furnished material before either of plaintiff’s mortgages was recorded. As a matter of fact, their claims were recorded long after the date of recordation of both of these mortgages.
 

 The sole reliance of the lien claimants for claim of preference in each of these cases is based upon their contention that the Hortman-Salmen Company
 
 itself furnished material
 
 before its mortgages were recorded.
 

 The facts do not bear out such contention. On the contrary, the testimony of John H. Lively, who is in charge of refinancing the construction and building contracts of the Hortman-Salmen Company, is clearly to the effect that no material was delivered under the $15,800 mortgage until July 29, 1928, or the day after the mortgage was recorded.
 

 The mortgage of $20,800 was recorded on August 1, 1927. The testimony of John H. Lively also shows that on that date the only act of the Hortman-Salmen Company was to furnish White with $7,000 to pay for the lots purchased on the same date by him from Mrs. Lelie Hawthorn.
 

 The building contracts between the Hortman-Salmen Company and White, as to the property covered by the $20,800 mortgage, were not'signed by the contracting parties until August 1, 1927. No material under these contracts was furnished by plaintiff prior to August 1, 1927, the date of the recordation of the mortgage. None was furnished by the lien claimants in this ease until long after that date.
 

 The judgment of the lower court in No. 29631 recognized the claim of Hortman-Salmen Company, as holder of the mortgage in that case, as priming all of the recorded liens except those shown to be for labor actually performed by certain laborers on the buildings.
 

 It is expressly provided in section 1 of Act No. 298 of 1926 “that the claim for wages of a laborer, for the work actually performed by said laborer ,on any building, shall, when presented and recorded by said laborer in accordance with the terms of this Act, create a lien on the land and improvements, which will prime the rights Qf mortgagees or vendors.”
 

 The judgment of the lower court in No. 29712 recognized the claim of Hortman-Sal
 
 *1068
 
 men Company, as the holder of the mortgage in that case, as superior to the recorded claims of the lienors, except that of Thos. S. Gibson for labor on the building, and, as the funds in the hands of the sheriff were exhausted by these preferred claims, the further claims of Thos. S. Gibson and other lienors for material furnished were dismissed, without prejudice, as against the defendant, Walter William White.
 

 We find no error in the judgments appealed from.
 

 Judgments affirmed.
 

 ROGERS, J., concurs in the decree.