No. 3636

Second Circuit

## HATHORN v. HUNDLEY ET AL.

(January 31, 1930. Opinion and Decree.)
(March 24, 1930. Rehearing Refused.)
(May 5, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

T. A. Carter, of Alexandria, attorney for plaintiff, appellant.

K. Hundley and White, Holloman & White, of Alexandria, attorneys for defendants, appellees.

DREW, J. Plaintiff sues Al Hundley, former clerk of court of Rapides parish, La., and his bondsman, Standard Accident Insurance Company, for $285, and interest, itemized as $250 on a mortgage note given by J. L. Brister, $25 attorney's fees, $10 costs in his suit against Brister, and 8 per cent. per annum interest on $250 from January 16, 1928, until paid.

He alleges that he was in the loan business, and that Brister applied to him for a loan on certain property; that he applied for and secured, on December 20, 1927, a certificate of mortgages, which failed to show a mortgage given by Brister to J. E. Oliver; that, relying on this certificate, he made a loan to Brister of $250 on January 16, 1928; that thereafter Oliver foreclosed his prior mortgage, and sold the property to satisfy the same; that the property did not bring sufficient to satisfy any part of his (plaintiff's) claim; that plaintiff afterwards secured judgment against Brister, and that his writ was returned nulla bona; and consequently he claims damages of the clerk and ex officio recorder and of his bondsman, in solido.

Both defendants answered and denied that plaintiff made his loan to Brister on the faith of the certificate of mortgages, and averred that plaintiff was informed of the Oliver loan, and was told that it existed, and was put upon inquiry; that he took a chance, believing the property worth enough to satisfy both loans; and that he was estopped to claim anything of the clerk because of the error in the certificate of mortgages.

The lower court found for defendants, and rejected plaintiff's demands.

The questions to be decided are:

Did plaintiff have knowledge of the existence of the Oliver mortgage?

Did he have knowledge that the Oliver mortgage was recorded?

Would knowledge of either or both be a bar to his recovery against the defendants?

Both Brister and Oliver told the plaintiff that the mortgage from Brister to Oliver existed, and we are sure that it would have been final if the certificate of mortgages had not been secured; but, when plaintiff received the certificate of mortgages, it failed to show this mortgage, and this undoubtedly raised in his mind a doubt about the existence of such a mortgage, for he called Oliver and told him

he did not have a mortgage on Brister's property, that he (plaintiff) had a mortgage certificate, and it did not show his mortgage. Oliver undoubtedly thought there was some mistake, for he replied that he would see about it, and did call up Mr. Grove Stafford more than one time, insisting that he find out about this mortgage, and Mr. Stafford visited the clerk's office to make an investigation and see if there was such a mortgage, and he testifies that he found the mortgage recorded, but that the index to the mortgage was not J. L. Brister to J. E. Oliver, but J. P. Brister to J. E. Oliver. This error in the index was no doubt responsible for the deputy clerk's error in the certificate of mortgages. Plaintiff may not have thought that the Oliver mortgage was in existence on this identical property, but as a prudent business man, as he was shown to be, he was certainly put on inquiry.

There is no positive testimony that plaintiff knew the Oliver mortgage was recorded. Oliver testified that he told plaintiff that Grove Stafford fixed it up, and that he supposed he placed it of record; that he had several conversations with plaintiff afterwards, but would not swear positively they were before the loan was made by plaintiff or after it was made.

Mr. Grove Stafford, after examining the record, had a talk with plaintiff, and told him the mortgage of Oliver was of record, but he would not positively say it was after the loan was made or before; he thought it was before, but would not be positive.

Plaintiff testifies that he made the loan on the day he first called up Mr. Oliver, and told him he had no mortgage on the property of Brister, and before any conversation with Mr. Stafford, and that he relied on the certificate of mortgages.

We are convinced that plaintiff did not have knowledge that the Oliver mortgage was recorded, and that relying on the certificate of mortgages furnished by the clerk of court thought he was securing a first mortgage on the Brister property. This conclusion is supported by the fact that plaintiff did not make the loan when Brister first requested it, and not until after he had secured the certificate of mortgages. The only way plaintiff had to contradict the certificate issued by the clerk of court under his seal of office, was to examine the record itself, or have it done by an attorney, and, if this was necessary, then a certificate of mortgages would be worthless, and an unnecessary expenditure of money to secure it. And in this particular case one might have searched the record, as the clerk did, and not find the Oliver mortgage, for the reason that it was improperly indexed.

When a clerk of court furnishes a certificate of mortgages, it is his duty to show every mortgage of whatsoever kind resting against the property, and, if his failure to do so causes damage to one relying on said certificate, the clerk of court is liable for all loss occasioned thereby.

Plaintiff testified that in all instances where he took a second mortgage on a piece of property he made an examination of the premises to ascertain the value, and that in this case, after securing the certificate from the clerk, he made the loan without seeing the property, and had never seen it since.

The first mortgage recorded, without regard to the date of its execution, is the first mortgage on the property, insofar as third persons are concerned. This doctrine was forever settled in this state in the case of McDuffie vs. Walker, 125 La. 152,

51 So. 100, 105. The language of the court is as follows:

"It is evident that whether a person acquires an interest in real estate to the extent of its value or part of its value as a mortgagee or as a vendee the principle involved in the application of the law of registry is the same; and hence if it be true that one may acquire a valid first mortgage, though he know at the time that as between the mortgagor and another there already exists an unrecorded mortgage upon the same property, it must also be true that one may acquire a valid title to such property, though he know that as between his vendor and another an unrecorded title has already been passed. The law makes no distinction between mortgages and sales or between creditors and vendees or mortgagees; nor does it discriminate between those who acquire property with knowledge of unrecorded contracts and those who acquire without such knowledge. Its purpose is to establish and enforce as a matter of public policy upon the subject of the most important property right with which it deals the rule that unrecorded contracts affecting immovable property 'shall be utterly null and void, except between the parties thereto.' "

The doctrine laid down in the McDuffie vs. Walker case has been followed without variance by the Supreme Court of Louisiana down to the present day. See Washington Bank & Trust Co. vs. Cowan-Kerr Lumber Co., 155 La. 1076, 99 So. 881; Cole vs. Richmond, 156 La. 263, 100 So. 419; Dalbey vs. Continental Supply Co., 155 La. 113, 98 So. 859; Howard vs. Coyle, 163 La. 257, 111 So. 697; Vaughn vs. Kemp, 4 La. App. 682; D. C. Nichols vs. Bell & Rachal, 2 La. App. 16.

Defendants have cited numerous cases holding that knowledge of an unrecorded sale necessarily constitutes bad faith, all of which are in direct conflict with the present jurisprudence of this state; and every case relied on by defendants was an earlier case than the McDuffie vs. Walker case.

Defendants cite in support of their contention the case of Swan vs. Moore, 14 La. Ann. 833, and quote freely from it. However, this case was specifically overruled in the case of Harang vs. Plattsmier, 21 La. Ann. 426.

It therefore follows that, if plaintiff did know, or have reason to know, there was an outstanding mortgage on the property owned by Brister, and was led to believe by the certificate of mortgages furnished by the clerk that it was not recorded, and acted relying on said certificate, then any damage occasioned by the erroneous mortgage certificate would be recoverable against the clerk of court and his bondsman. R. C. C. arts. 3393, 3394; Fox vs. Thibault, 33 La. Ann. 32.

Defendants cite the case of Citizens' Bank & Trust Co. vs. Walker, 9 La. App. 143, 119 So. 487, in support of their contention; but it is not in point. That case was decided on an exception of no cause of action, which was sustained for the reason that the petition did not allege that the plaintiff had exhausted its remedies against the vendor of the note held by plaintiff and the original mortgagor.

Other cases cited by defendants are where the plaintiff was purchaser from the vendee at sheriff's sale, and was not the original vendee at the sheriff's sale, wherein the certificate of mortgages failed to disclose a recorded mortgage; the court holding that such an action against the clerk of court is not a real action, following the property, but is a personal action, which arose from the acts which preceded the sale, and entered into his motives for becoming the purchaser. And in that manner distinguished from this case.

Defendant Standard Accident Insurance Company, has prayed, in event of judgment for plaintiff, that its rights under its

plea of discussion be reserved, which rights it is entitled to.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed and annulled, and that there be judgment in favor of the plaintiff, W. Richard Hathorn, and against the defendants Al Hundley and the Standard Accident Insurance Company, in solido, in the full sum of $250, with 8 per cent. per annum interest thereon from January 16, 1928, until paid, and 10 per cent. attorney's fees, on principal and interest, and for the further sum of $10, court costs in the case of W. Richard Hathorn vs. J. L. Brister, and for all costs of this action, in both courts.

It is further ordered, adjudged, and decreed that the right of the defendant Standard Accident Insurance Company to point out property of its principal, Al Hundley, to be seized in satisfaction of this judgment, and to advance the costs of discussing same is hereby reserved to it.