219 So.2d 258 (1968)
Jack R. COURSHON
v.
MAURONER-CRADDOCK, INC., two cases.
Nos. 7292-7293.
Court of Appeal of Louisiana, First Circuit.
November 12, 1968.
Dissenting Opinion December 4, 1968.
Rehearing Denied December 16, 1968.
Writ Refused March 13, 1969.
*260 Clint L. Pierson, of Pierson & Pierson, Baton Rouge, for Louisiana Ready-Mix Company, Inc.
Doris Gates Rankin, Baton Rouge, for Acme Brick Co.
Norman Sisson, Baton Rouge, for Better Heating & Air Conditioning Co., Inc.
James Pierson Baton Rouge, for Mid-South Door Co. Inc.
Ben Lightfoot, of Durrett, Hardin, Hunter, Damerons & Fritchie, Baton Rouge, for Baton Rouge Lumber Co., Inc.
M. Aubrey McCleary, Jr., of McCollister, Belcher, McCleary & Fazio, Baton Rouge, for Jack R. Courshon.
Sanders, Miller, Downing & Kean, Breazeale, Sachse & Wilson, Forrest, Kiefer & Hubbs, Landry, Landry & Gary, Wray, Simmons & Robinson, Kolb & Rooks, Baton Rouge, amicus curiae.
Rehearing En Banc Denied December 16, 1968.

ON REHEARING
En banc.
LANDRY, Judge.
We granted rehearings in these consolidated cases to review the correctness of our prior decree adjudging the claims of plaintiff Jack R. Courshon, Trustee (Mortgagee), under acts of conventional mortgage sued upon in each instance, inferior to the claims of certain materialmen in the distribution of the proceeds realized from the sale of property covered by mortgagee's mortgage in foreclosure proceedings via executory process.
In Suit Number 7292, Mortgagee alleges that, as nominee of First Mortgage Investors, a Massachusetts Business Trust, he is the holder in due course of four certain promissory notes executed by defendant on specified dates, aggregating $19,568.00, all payable to Royal American Life Insurance Company, all of which are secured by a mortgage note dated December 6, 1965, by defendant, payable to defendant on demand, in the sum of $23,500.00, and secured by a lien covering Lot 161, Tara Subdivision, East Baton Rouge Parish. In Suit Number 7293, similar allegations are made to the effect that the four hand notes *261 sued upon total $19,968.00 and are secured by a conventional mortgage dated December 6, 1965, in the amount of $24,000.00, affecting Lot 162, Tara Subdivision.
On July 6, 1966, subsequent to maturity of all the hand notes in question and mortgagee's default thereon, mortgagee caused an order of executory process to issue in each of these cases. Pursuant thereto the pledged properties were on August 31, 1966, adjudicated to mortgagee. On the date of the aforesaid sale lienor, Louisiana Ready-Mix Concrete Company, intervened in the suits asserting its lien to be superior to that of mortgagee and entitled as such to be paid by preference out of the proceeds of the sale. Alternatively, intervenor prayed that it be paid out of any surplus remaining after discharge of plaintiff's mortgage. Subsequently, on October 3, 1966, mortgagee obtained a rule ordering lienors, Louisiana Ready-Mix Concrete Company, Mid-South Door Company, Inc., Acme Brick Company, Baton Rouge Lumber Company, Inc. and Better Heating and Air Conditioning, Inc., to show cause why their respective liens should not be adjudged inferior to plaintiff's mortgage. The trial court decreed plaintiff's claims superior to those of lienors and in our initial decree we reversed said determination. Our original decree was based on the premise that whereas plaintiff's mortgages were mortgages to secure future advances within the purview of the term as contained in LSA-R.S. 9:4801(C), they were nevertheless inferior to lienors' claims because a portion of the funds derived under the mortgages were utilized by the mortgagor for purposes other than erecting improvements on the subject premises. More particularly, we found that since a part of the moneys advanced by mortgagee was in each instance used to defray a portion of the purchase price of the lots on which the improvements were constructed, and other portions were expended in the payment of commissions, the claims of mortgagee were thereby subordinated to those of the materialmen. In effect our former decree held that the provisions of LSA-R.S. 9:4801(C) contemplate that for the mortgagee to prevail, the entire proceeds of a loan to secure future advances must be applied to construction costs. Upon further consideration of the issue, we now conclude our first determination was erroneous. We arrive at our present decision principally because we find that we were mistaken in holding that the issues in this matter are controlled by the provisions of LSA-R.S. 9:4801. For reasons hereinafter made manifest, we hold these causes fall within the ambit of LSA-R.S. 9:4812.
The record establishes that subject mortgages were executed and recorded prior to delivery of any material to or the performance of any work or labor upon either job site. It is acknowledged that the works in question were undertaken by the owner in person and no contract for either project was entered into or recorded. Plaintiff admits the liens were timely filed.
While this matter was pending before us on plaintiff's application for rehearing, lienors have for the first time filed in this court peremptory exceptions of no right and no cause of action attacking certain procedural aspects of the sales by executory process had in the trial court. We deem it proper to first dispose of said exceptions.
The procedural deficiencies urged herein by lienors may be stated as follows:
First, that the plaintiff, Courshon, who has sued in this action as nominee of the Trustees of First Mortgage Investors, Inc. failed to substantiate by authentic evidence, his authority to represent that corporation in this action, as required by Article 2635 of the Code of Civil Procedure.
Second, that the hand notes upon which the suit is brought evidence no authority in authentic form that the endorser for Royal American Life Insurance Company, Mr. Ralph H. McCollister, was authorized to endorse these notes to the present holder.
*262 Third, that certain notes made payable to American Bank and Trust Company of Baton Rouge upon which this action was brought, bear no indicia of indorsement, assignment, or transfer by the payee to the plaintiff.
Fourth, that the notes upon which this action was brought were not attached to the petition of the plaintiff for executory process.
Since these allegations, if true, contravene the requirements of the Code of Civil Procedure concerning the use of executory process, it will be necessary at this point to determine the propriety of these exceptions before proceeding to the merits of this case. Article 2642 of the Code dictates the manner in which procedural defects alleged in the executory proceedings are to be asserted in the following terms:
"Defenses and procedural objections to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.
A suspensive appeal from an order directing the issuance of a writ of seizure and sale shall be taken within fifteen days of the signing of the order. The appeal is governed by the provisions of Articles 2081 through 2086, 2088 through 2122, and 2124 through 2167, except that the security therefor shall be for an amount exceeding by one-half the balance due on the debt secured by the mortgage or privilege sought to be enforced, including principal, interest to date of the order of appeal, and attorney's fee, but exclusive of court costs."
Apposite to the case at bar are the two methods which this article prescribes as the proper means to raise any objections to the formalities attendant to the use of executory process; that is, either the use of an injunction or a suspensive appeal. The appellants in this action did neither. Although the notice required by law to be made before property may be sold pursuant to executory process was duly given, only on the day of the judicial sale did one of the lienors, Louisiana Ready-Mix Concrete Company, intervene; and they did not do so in an attempt to contest the formalities of the proceeding, but were petitioning only to have the proceeds of the sheriff's sale held until a determination could be made of the priorities of the various claimants. Numerous other materialmen were joined as defendants to a rule nisi, and it is from the latter proceeding that all have appealed. No attempt was made to enjoin the executory proceedings.
Appellants presently seek to assail the validity of the executory proceedings through peremptory exceptions of no right and no cause of action. Such procedure appears untimely in view of the clear and express provisions of LSA-C.C.P. Art. 2642. As previously noted, LSA-C.C.P. Art. 2642 establishes the rule that defenses and procedural exceptions to an executory proceeding may be instituted by either one of two means, namely, suspensive appeal or injunction. It also appears that the jurisprudence establishes and sanctions a third means of questioning the validity of executory proceedings. See Viley v. Wall, 154 La. 221, 97 So. 409 (1923); Doherty v. Randazzo, 128 So.2d 669 (La.App.4th Cir. 1961); Tapp v. Guaranty Finance Company, 158 So.2d 228 (La.App.1st Cir. 1963), which establish the rule that an executory proceeding may be attacked by separate suit or action. So far as we are aware, suspensive appeal, injunction and separate action are the only three methods in which defenses and procedural objections may be asserted in opposition to an executory proceeding.
Lienors maintain LSA-C.C.P. Article 2642 applies only to parties to the executory proceedings and not third parties. They also contend that being third parties, they come within the purview of LSA-C.C.P. Article 2643 which permits third parties to assert claims in an executory proceeding *263 and places no limitation on their right to attack the validity of the sale by executory process.
A careful reading of the cited Article 2642 discloses that it merely gives third party mortgagees or lienholders the right to intervene and assert a preference in the distribution of the proceeds of the sale. The thrust of the article is that if the intervening mortgagee or lienor establishes a claim superior to that of the seizing creditor, the former is paid out of the proceeds in preference to the latter, otherwise out of any surplus remaining after satisfaction of the demand of the foreclosing creditor. While this article gives third party lienholders certain rights regarding distribution of the proceeds of the sale, it does not confer upon them a special privilege or right to attack the validity of the proceedings in any manner other than that authorized by general law.
In Mack Motor Truck Corporation v. Coco, 235 La. 1077, 106 So.2d 518, the Supreme Court rejected use of a peremptory exception in an executory proceeding. In overruling the judgment of the trial court sustaining such an exception, the court in the cited case commented as follows:
"Plaintiff contends, among other things on this appeal, that the judge erred in his ruling as a peremptory exception has no pertinence to proceedings via executiva, its function and responsiveness being restricted or ordinary or summary matters in which relief is granted or denied only after a hearing. * * *
These points are well taken. It is elementary in our law that executory proceedings are not actions which fall within the purview of our Pleading and Practice Act (R.S. 13:3601); they are merely orders issued ex parte under acts importing a confession of judgment, operating strictly in rem, in which no exception, answer, intervention nor call in warranty may be filed. Folger v. Roos, 40 La.Ann. 602, 4 So. 457, and Advance Rumley Thresher Co. v. Shove, 7 La. App. 472. It is well settled that the only procedure available for arresting executory proceedings is injunction and suspensive appeal. If it is claimed that there was not sufficient authentic evidence before the judge to authorize the issuance of the writ, a suspensive appeal may be taken from the order of seizure and sale, it being recognized, however, that the remedy of injunction is also available to arrest the sale even though the defect in the executory proceeding is patent on the face of the record. * * *
Since we find that the trial judge erred in sustaining the peremptory exception, there remains only to determine the validity of the sale to plaintiff." (Emphasis added.)
Though the Mack case was decided before our present Code of Civil Procedure was enacted, it is apparent from the official comments attending Article 2642 that the authors of that article intended to codify the rule of that case. The directives of that article are to be applied to all parties that seek to arrest an executory proceeding and had the appellants acted under its provisions, they may have been successful. The use of the peremptory exceptions of no cause and no right of action is patently improper in this instance and they must be overruled for the aforementioned reasons.
We commence discussion of the issues presented by referring to the well established rule that the provisions of LSA-R.S. 9:4801 et seq., which give laborers, materialmen, contractors and others designated therein liens on private works, are to be strictly construed against the parties in whose favor the liens are therein created. Cole v. Schexnadire, 163 La. 132, 111 So. 651; National Bank of Commerce in New Orleans v. Justice La.App., 212 So.2d 711, and cases therein cited.
The lien statutes giving privileges to laborers, materialmen and others who *264 supply material or perform work on private construction projects do not impliedly repeal the provisions of LSA-C.C. Article 3249 which establish the rights of creditors holding conventional mortgages on immovables. Conroy v. Pine Belt Oil Co., 143 La. 879, 79 So. 523.
The rights of a conventional mortgagee are contractual and stem from a mutual understanding with the mortgagor freely and voluntarily undertaken. More particularly, a mortgage is a right granted a creditor over the debtor's property conferring upon the former the right to have the subject property seized and sold in the event the debtor default in payment. LSA-C.C. Article 3279.
A mortgage is a real right affecting immovable property bound for the discharge of the obligation assumed. A mortgage is indivisible and follows the property even though it passes into the hands of third parties. LSA-C.C. Article 3279.
Mortgages may be given for obligations which have not yet come into existence, such as security for indorsements which another promises to make for the mortgagor. LSA-C.C. Article 3292; Hortman-Salmen Co. v. White, 168 La. 1057, 123 So. 711.
The effect of a mortgage securing a future obligation is limited to the actual obligation of the mortgagor. To that extent the mortgage is retrospectively effective to the date of its recordation. D'Meza v. Generes, 22 La.Ann. 285.
Among creditors, mortgages whether conventional, legal or judicial have force only from the time of recordation. LSA-C.C. Article 3329; Central Savings Bank & Trust Co. v. Tucker, 182 La. 289, 161 So. 759. The mortgage first recorded, irrespective of date of execution, has priority insofar as third parties are concerned. Hathorn v. Hundley, 13 La.App. 323, 125 So. 774.
The rationale of the jurisprudence interpreting statutes granting liens on immovables to materialmen, laborers and others furnishing material or performing labor on private construction works is that liens granted by the pertinent statutes are to be rigidly interpreted against the lienors and liberally construed in favor of third parties whose common rights are thereby impinged upon. Pennington v. Campanella, La.App., 180 So.2d 882, and authorities cited therein.
As recognized by Joseph Dainow, Professor of Law, Louisiana State University, in his commentary upon building construction privileges appearing in 27 Louisiana Law Review, Pages 332, 333, the statute in question envisions three separate and distinct factual situations under which varying rights are granted laborers, materialmen and others upon whom lien privileges are therein conferred.
LSA-R.S. 9:4801-4805, inclusive, expressly govern instances wherein a written contract and appropriate bond are duly executed and recorded. In these cases Section 4801, Paragraphs A through C, inclusive, confers upon materialmen liens superior to the claims of all except (1) Taxes; (2) local assessments for public improvements; (3) laborers' liens, and (4) bona fide mortgages or vendors liens which existed and were recorded prior to the furnishing of any material or performance of any work on the construction project. Paragraph (C) of Section 4801 further provides that the claims of materialmen shall also be inferior to mortgages granted by the owner for the purpose of securing future advances when such mortgages exist and are recorded prior to delivery of materials to or commencement of work upon the construction site.
The second category of cases covered are those in which the contract is timely recorded but bond is either not furnished or recorded, or if recorded, it is either insufficient or the surety thereon held insolvent. In these instances lienors are accorded *265 a personal action against the owner in addition to their claims against the property. Liens falling within this classification must be filed within the same time limitation affecting liens arising under Section 4801. See Section 4806.
The final classifications encompassed by the statute are those wherein the owner undertakes the work for which no contract has been entered into (the case at hand inasmuch as the owner undertook the work himself) or when a contract has been entered into but not recorded. These situations are expressly provided in Section 4812.
In substance Section 4812 confers upon materialmen a lien which, if properly and timely evidenced and filed, is superior to all claims except: (1) Taxes; (2) assessment for local improvements; (3) a bona fide mortgage or a bona fide vendors privilege when the vendors privilege or mortgage exists and was recorded prior to commencement of work upon or furnishing of material for the project, and (4) laborer' liens. It also provides that liens must be filed within 60 days of last delivery of material or last performance of work. Under Section 4812 the lienor also may proceed against the owner personally.
The differences between the various sections of the statute have been meticulously noted and enforced by the courts. For example, in Schwartz Supply Company v. Zimmerman, 228 La. 861, 84 So.2d 438, the contract was recorded but not the bond. Under such circumstances liens filed more than thirty days after recordation of notice of acceptance were deemed untimely pursuant to Sections 4802 and 4806, notwithstanding lienors' protestations that the 60 day period set forth in Section 4812 was applicable.
That Section 4812 applies when the contract and bond are not recorded has been squarely held in Hortman-Salmen Co., Inc. v. White, 168 La. 1049, 123 So. 709, from which we quote as follows:
"As the building was erected in 1927, the question presented as to which is entitled to payment by preference, the mortgage or the lien, is governed by Act No. 298 of 1926. As the contract for the construction of the building was not recorded, the question presented is governed peculiarly by section 12 of that act.
This section provides, among other things, that, where no contract has been entered into or recorded, as required by the statute, any person, furnishing service or material or performing any labor on the building or other work, is entitled to a lien and privilege on the building or other work and on the land on which it rests, if such person records, within a specified time, in the mortgage records of the parish, where the work is being, or has been, done, a copy of his estimate, or an affidavit of his claim, or any writing, evidencing the same. The closing part of the section, which is the pertinent part in this case, since the existence of the lien is admitted, reads as follows, to wit:
`Said lien and privilege shall be superior to all other claims against the said land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if said vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished; provided, however, that the wages of a laborer for work done by him on any building, shall, when presented and recorded by him in accordance with the provisions of this act, create in his favor a lien and privilege on the land and improvements which will prime the rights of mortgagees or vendors.'" (Emphasis ours.)
*266 It is significant to note that the present wording of Section 4812 is identical to that found in Section 12 of Act 298 of 1926, which lists those claims given priority over the claims of materialmen.
By the clear, express and unambiguous terms of Section 4812, the lien accorded a materialman is inferior to a bona fide mortgage which existed and was recorded prior to commencement of work or furnishing material for the construction project.
Since the statute must be rigidly construed against lienors, the phrase "a bona fide mortgage" found in Section 12 can only be held to mean in effect "any bona fide mortgage." This is necessarily so inasmuch as no qualification is placed upon the type of mortgage given preference if it is bona fide and previously recorded. Neither do the provisions of Section 4812 require the proceeds of the mortgage be expended for any particular purpose. The statute requires only that the mortgage be bona fide which in legal terminology means valid in law.
That the mortgage in question is valid even though given to secure advances is well settled. LSA-C.C. Article 3292; Hortman-Salmen Co. v. White, supra.
The second case styled Hortman-Salmen Co. v. White, 168 La. 1057, 123 So. 711, is virtually identical to the instant matter. In the cited authority a mortgage was given for a stated amount which was not fully advanced at the date of recordation. Despite the fact advances were made subsequent to recordation, it was held the mortgage was bona fide and since the provisions of Section 12 of Act 298 of 1926 were applicable, it primed the liens of materialmen. In so holding, the court stated:
"It is true that the full amount of the loans was not advanced in money to White by plaintiff in either case at the date of the recordation of the mortgage, although the recorded acts of mortgage state that such advances had been made in fact.
This is unimportant, however, in our opinion, as it is well settled, as stated in the syllabus of Pickersgill v. Brown, 7 La.Ann. 297, that: `Mortgages, under the hypothecary system of Louisiana, may be given to secure debts having no legal existence at the date of the mortgage. It is not essential, in such a mortgage, even with respect to third persons, that it should express on its face, that it was executed to secure future debts. It may be described as a security for existing debts, and yet used to protect those which, in contemplation of the parties, were to be created at a future time.'"
Finally, we are urged to find the manner in which the proceeds of the mortgage may be expended is limited by the following language appearing therein:
"This note is executed, issued and delivered and the mortgage securing it is given to secure advances to be made in the future to the said maker and mortgagor from time to time for purposes of constructing, erecting, repairing and/or altering the property described hereinafter, said advances to be made in the future under the provisions of Louisiana Revised Statutes of 1950, Title 9, Section 4801, as amended."
In essence lienors contend that regardless of whether LSA-R.S. 9:4801 or 4812 is applicable to the case at hand, the above quoted language of the mortgage requires that all funds advanced be spent on construction, consequently any funds not so expended do not enjoy the protection of the mortgage. Lienors further argue that third persons examining the public records may rely on the foregoing declaration and its alleged effect, and may therefore anticipate that the full amount of the mortgage will be available to pay the claims of laborers and materialmen. So contending, lienors maintain their claims are superior to those of mortgagee because admittedly a portion of the advances were used to pay *267 part of the purchase price of each lot and also certain commissions attending the sales thereof. Additionally, it is contended mortgagee is obligated to advance the full extent of its commitment in each instance which would have made additional funds available to pay laborers and materialmen. Having reasoned thusly, lienors urge that mortgagee's failure to advance its total commitment and allowing a portion of the advances to be used for other than construction purposes deprives mortgagee of the priority accorded under the terms of its mortgage. Alternatively, lienors argue the rights of mortgagee are subordinated to material liens to the extent of total expenditure of mortgage funds for land acquisition costs and payment of commissions.
In answer to the foregoing contention, we note that LSA-C.C. Article 3357 provides that a conventional mortgage recorded pursuant to LSA-C.C. Article 3348 "shall have the effect of preserving the mortgage or privilege" but "shall in no manner be evidence of the validity of the debt of claim * * *."
We note further that LSA-C.C. 3397 prescribes that the effect of a mortgage shall be to prefer the mortgagee, inter alia, to mortgagees posterior in date of registry. From the foregoing, it appears the registration of a mortgage is intended only to protect the security of the mortgagee and under the express language of LSA-C.C. Article 3357, third persons may not rely upon the representations contained therein. Moreover, it is well settled that a collateral mortgage given to secure advances is effective only to the extent of advances actually made as evidenced by the hand note or notes executed and delivered to mortgagee. D'Meza v. Generes, 22 La. Ann. 285.
We believe it common knowledge in the business and financial world that the face amount of a mortgage to secure future advances is not necessarily an indication that the totality thereof will in effect be loaned.
Considering our holding on this rehearing, that these matters fall within the purview of LSA-R.S. 9:4812, we hereby expressly and specifically repudiate and retract all views, opinions and conclusions contained in our original opinion concerning the effect of LSA-R.S. 9:4801. We do so because inasmuch as we find Section 4812 pertinent, the remarks in our original decree regarding inapplicable Section 4801 are pure dicta.
It follows that the claims of defendants-appellants are inferior to those of mortgagee.
Accordingly, our previous decree reversing the judgment of the trial court is hereby recalled, annulled and set aside and judgment rendered herein affirming the judgment of the trial court in favor of plaintiff-mortgagee and against defendants-lienors.
It is further ordered, adjudged and decreed that all costs of these proceedings be paid by defendants-lienors jointly.
Affirmed.
BAILES, J., dissents and joins in the dissent of Judge Reid.
REID, Judge (dissenting).
I respectfully dissent from that portion of the majority opinion on rehearing which holds that our original decree was incorrect in holding that the provisions of LSA-R.S. 9:4801(C) contemplate that for the mortgagee to prevail, the entire proceeds of the loan to secure future advances must be applied to construction costs. In essence, I disagree with the majority holding that LSA-R.S. 9:4801(C) is not the proper statute to be applied in the instant case.
It is conceded that the subject mortgages were executed and recorded and the notes delivered to the lender prior to delivery of any materials to or performance of any work or labor upon either of the job sites. It is further conceded that no contract was recorded. However, I cannot agree with the holding of the majority that no contract *268 was entered into. There are filed in the record, under Plaintiff's Exhibits 3 and 4, documents entitled Construction Loan Agreements, which were entered into between Royal American Life Insurance Company, the original mortgagee, and Mauroner-Craddock, Inc., appearing as both mortgagor and contractor, which said construction loan agreements certainly contain sufficient elements of a building contract to be so designated.
It is also conceded that the liens were timely filed.
The majority opinion goes on to hold that LSA-R.S. 9:4801-4805, inclusive, expressly govern instances wherein a written contract and appropriate bond are duly executed and recorded, and, therefore, since there was no recorded contract and bond here, the provisions of R.S. 9:4801(C) regarding advances do not apply in this case, and the lienholders' rights under Section 4812 were inferior to a bona fide mortgage which existed and was recorded prior to commencement of work or furnishing of material for construction.
It is my opinion that R.S. 9:4801(C) clearly shows that it was not the intent of the Legislature to limit its application to a situation where a written contract and appropriate bond were duly executed and recorded, but that it should apply to cases which would fall under R.S. 9:4812.
R.S. 9:4801(C) reads as follows:
"When a mortgage note has been executed by the owner of the immovable for the purpose of securing advances to be made in the future, and the mortgage has been recorded and the note delivered to the lender before any work or labor has begun or material been furnished, or before the recordation of a building contract, the amount of the advances made thereafter shall be deemed secured by the mortgage in precedence to and with priority over any of the claims had under the privileges conferred by Sub-Section A of this Section, except as stated in Sub-Section D hereof."
It is clear that this Section is intended to cover two separate situations, that is:
"before any work or labor has begun or material been furnished,
or
before the recordation of a building a contract * * *."
It is pointed out that the two situations are separated by a comma before the second "or" and, therefore, as is the case herein, if the mortgage has been recorded and the note delivered to the lender before any work or labor has begun or material has been furnished, the Section applies regardless of whether or not the contract has been recorded.
It is, therefore, submitted that Subsection C applies to both the situation where there is a building contract duly recorded and where there is not a building contract or where the building contract is not duly recorded.
It is further respectfully submitted that the holding of this Court in its original opinion as to the application of LSA-R.S. 9:4801(C) should apply herein.
I also cannot agree with the opinion of the majority in its finding that the language inserted in the mortgage that "said advances to be made in the future under the Provisions of Louisiana Revised Statutes of 1950, Title 9, Section 4801, as amended" is without merit. I do not question the interpretation placed upon Civil Code Article 3357 by the majority. However, it is my feeling that equity would estop the parties in inserting the quoted language in the mortgage and in what is designated a construction loan agreement (but which is in my opinion a building contract) and then by merely failing to record the said building contract take the matter outside the provisions of R.S. 9:4801 for I do not feel that the law is to be used in such a self-serving manner.
I also feel that the majority holding to the effect that R.S. 9:4801(C) does not apply where there is no recorded contract *269 can lead to a great deal of confusion. Despite the language of the majority opinion, the jurisprudence is not uniform and is not clear as to the effect to be given to collateral mortgages where advances are to be made in the future. While it is true that ordinarily, where you have ordinary conventional mortgages, the mortgages will rank from the time of the recordation, this is not true in the case of mortgages which provide for future advances, in that Civil Code Articles 3292-3293 provide that it is the fulfillment of a promise which imparts to the mortgage a retrospective effect to the time of the contract.
That there is some confusion in this matter can be seen not only by an examination of the jurisprudence, but also by the fact that the Legislature has seen fit to pass special legislation concerning future advances. Why else would the Legislature have enacted Subsection (C) if this were not the case? In addition to that, the Legislature also enacted LSA-R.S. 6:767, which provides:
"During the existence of any vendor's privilege and first mortgage any association may advance to the borrower money for the payment of taxes, insurance premiums, special assessments on, repairs, additions and improvements to and remodeling and maintenance of, the property on which the original loan was made, provided that the aggregate of such advances when added to the balance due on the amount of the original loan shall not exceed the original amount of said loan. These advances, together with all interest, costs, charges, etc., shall be secured by the same vendor's privileges and mortgage securing the original note. In the event of foreclosure, the certificate of the secretary or assistant-secretary of the association certifying the amount due for these advances, constitutes authentic evidence of the indebtedness."
Similar legislation was enacted covering federal savings and loan associations. See LSA-R.S. 6:835.1.
In order for this case to be properly decided in the light of the majority holding, it would, in my opinion, be necessary for the case to be remanded to the District Court for determination as to whether or not the principal obligation had been fulfilled prior to the time the rights of materialmen had attached. This would also have to be determined by the Courts every time a conflict arose between materialmen and the holder of a mortgage providing for future advancements where no contract had been recorded.
Insofar as the holding of the majority concerns the procedural deficiency urged by the lienors, I am in agreement and do not dissent.
For the foregoing reasons, I respectfully dissent from the majority opinion of this Court.
Rehearing denied.
REID and BAILES, JJ., dissents from the refusal to grant a rehearing.