REGAN, Judge
(dissenting).
I respectfully dissent from that part of the majority opinion and decree that reverses the judgment of the lower court so as to recognize the privilege of the plaintiff in priority to any sums due on the 1966 note.
Every dissenting opinion is necessarily a declaration that it is the belief of the author thereof that the law has been erroneously applied to the facts by the majority opinion. However, it is not every time that a slight or insignificant difference of opinion exists that a judge who disagrees with the majority is justified in dissenting. The matter should either be of sufficient judicial or legal importance to justify the placing of his dissent in the record, so as to facilitate the review thereof by a higher court, or the matter be of such a nature that the dissenting judge deems it in the interest of the public welfare.[1]
The foregoing rationale has provoked this dissent because of the judicial and legal importance of the, issue before the court.
The Louisiana Civil Code defines mortgage as an accessorial obligation depending upon the existence of an underlying principal obligation.[2] A strict construction of the requirement of a principal obligation would undesirably restrict normal commercial practices, and, therefore, the Louisiana Legislature established an exception permitting conventional mortgages to secure future obligations.
“Art. 3292. A mortgage may be given for an obligation which has not yet risen into existence; as when a man grants a mortgage by way of security for indorse-ments, which another promises to make for him.”
*257 “Art. 3293. But the right of mortgage, in this case, shall only be realized in so far as the promise shall be carried into effect by the person making it. The fulfillment of the promise, however, shall impart to the mortgage a retrospective effect to the time of the contract.”
The Louisiana mortgage to secure future obligations is commonly referred to by the practitioner as a “collateral mortgage” and takes the form of a notarial act whereby the mortgagor acknowledges an indebtedness for the amount of the mortgage note to future holders.[3] The mortgage is recorded in favor of a nominal party, who, on behalf of the future holders, accepts the mortgage note secured by the property of the mortgagor. It is not necessary that there be a debt owed the nominal mortgagee, and when the note passes to owners as evidence of a debt, the mortgage to secure payment attaches.[4] It is not essential that the mortgage should express on its face that it was given to secure future debts; it may be described as a security for existing debts, and yet be used to protect those which, in the contemplation of the parties, were to be created at a future time.[5] However, where advances were to be made during the present year according to the express terms of the collateral mortgage the time for making such advances could not be extended to secure advances made during the next year.[6]
Once the collateral mortgage is created it may serve as a mortgage for future use in two ways. First, the issuance of the mortgage note to subsequent creditors will secure the debt of the mortgagor without execution and recordation of new acts of mortgage each time the note is issued. Second, once in the hands of a creditor the mortgage note may be used as security for future advances up to the amount of the recorded mortgage. Because the collateral mortgage is recorded at the time of the act of mortgage, both of these functions raise the question of priority of encumbrances on the mortgaged property arising after recordation but prior to the existence of future obligations which the collateral mortgage secures.[7]
This court has posed for its consideration the question of whether the mortgage granted in 1963 was a collateral mortgage which secured the note issued in 1966. The majority opinion reasons that Walmsley v. Resweber[8] overruled Pickersgill & Co. v. Brown [9] so that a collateral mortgage must expressly state that it is for future debt. The ratio decindendi of the Walmsley case is to the effect that an individual may create mortgage paper and hold it as long as he pleases, and by issuing it create a mortgage; but, as against third persons, whose rights have attached in the meantime, the mortgage takes date and rank only upon acceptance of the mortgage by the creditor and not upon recordation. The Louisiana Supreme Court further stated that a mortgage is a contract, the perfection of which requires two parties, and not until acceptance of the mortgage note by the creditor does the mortgage become effective, and any encumbrances arising while the mortgage note is in the hands of the mortgagor arise prior to the effective date and are entitled to priority *258 over the collateral mortgage. Dicta in the Walmsley case stated:
“A mortgage may be executed for any debt pour autrui conditional, and even for future debt, but it must be so stipulated.” (Emphasis supplied.)
The majority opinion explains that it is constrained to adopt the thinking of Walmsley v. Resweber decided in 1899 since it was after the Pickersgill case. However, in Hortman-Salmen Company v. White,[10] decided in 1929, the Louisiana Supreme Court cited approvingly the holding of Pickersgill & Co. v. Brown[11] quoting it as follows:
“[1] It is true that the full amount of the loans were not advanced in money to White by plaintiff in either case at the date of the recordation of the mortgage, although the recorded acts of mortgage state that such advances had been made in fact.
“This is unimportant, however, in our opinion, as it is well settled, as stated in the syllabus of Pickersgill v. Brown, 7 La.Ann. 297, that: ‘Mortgages, under the hypothecary system of Louisiana, may be given to sectire debts having no legal existence at the date of the mortgage. It is not essential, in such a mortgage, even with respect to third persons, that it should express on its face, that it was executed to secure future debts. It may be described as a security for existing debts, and yet used to protect those which, in contemplation of the parties, were to be created at a future time.’ (Emphasis added.)
“The mortgage in this case is conventional, and it is expressly provided in article 3292 of the Civil Code that: ‘A mortgage may be given for an obligation which has not risen into existence, as when a man grants a mortgage by way of security for indorsements, which another promises to make for him.
“ ‘But the right of mortgage, in this case,’ as declared in article 3293 of the Civil Code, ‘shall only be realized in so far as the promise shall be carried into effect by the person making it. The fulfillment of the promise, however, shall impart to the mortgage a retrospective effect to the time of the contract.’ See, also, Matthews, Finley & Co. v. Rutherford, 7 La.Ann. 225, and Morris v. Executors of Cain, 39 La.Ann. 712, 1 So. 797, 2 So. 418.
“As stated in Pickersgill v. Brown, 7 La.Ann. 307: ‘The general definition of mortgage, contained in the 3257th article of our Civil Code, supposes the existence of a principal obligation, of which the mortgage is an accessory, and such is the general theory implied in article 3251. But inasmuch as such a theory, strictly construed, would be inadequate to all the practical purposes of business and the necessities of commerce, the lawgiver in article 3259, has allowed the conventional mortgage a wider range, by declaring, that it “may be given for an obligation which has not yet risen into existence; as when a man grants a mortgage, by way of security, for endorsements which another promises to make for him.” ’
“[2] It must be presumed that the Legislature of 1926, in passing Act No. 298 of that year, was acquainted with the decisions of this court, the textual provisions of the Civil Code, the wider scope of conventional mortgages, and the practical aid of such mortgages to business and commerce within the state.”
The majority opinion cites Louisiana Revised Statutes 6:767 and 767.1 to support its position. It is well settled that when a statute is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.[12] *259 Louisiana Revised Statute 6:767 merely provides that:
During the existence of any * * * mortgage any association may advance to the borrower money for the payment of taxes, insurance premiums, special assessments on, repairs, additions and improvements to and remodeling and maintenance of, the property on which the original loan was made, provided that the aggregate of such advances when added to the balance due on the amount of the original loan shall not exceed the original amount of said loan. These advances * * * shall be secured by the same * * * mortgage securing the original note. * * * ”
Louisiana Revised Statute 6:767.1 provides that if the advance is made for any purpose other than those listed in the above statute then the advance shall not prime any encumbrance recorded between the time of recordation of the original mortgage and the date of the advance. Otherwise, the advances are effective from the date of the original mortgage’s recordation. These statutes cannot be cited as charging in any manner the principle of law expressed in Pickersgill & Co. v. Brown[13] that to affect third persons it is not essential that a collateral mortgage express on its face it was executed to secure future debts.
Admittedly, the collateral mortgage is endowed with serious functional disadvantages. Recordation of such a mortgage merely discloses the maximum possible encumbrance which the collateral can secure, but it does not indicate whether the mortgage has become effective by issuance to a creditor, or, if issued, the amount actually secured by the mortgage. Since there is no requirement that it appear on the face of the instrument that it is to secure future advances, a third party is placed at a disadvantage in not knowing whether the mortgage is in fact a collateral mortgage. Consequently, notice furnished to third parties by recordation of a collateral mortgage is inadequate.
For the foregoing reasons I am compelled to dissent in part from the majority opinion.

. Militello v. Bankers Life & Casualty Co., La.App„ 141 So.2d 454 (1962).

. La.Civil Code Art. 3285.

. One form, but not the exclusive or legally required form, is found in Woodward, Louisiana Notarial Manual, 151 (1953).

. Richardson v. Cramer, 28 La.Ann. 357 (1876).

. Collins v. His Creditors, 18 La.Ann. 235 (1866) ; Pickersgill & Co. v. Brown, 7 La.Ann. 297 (1852) ; Reasonover, Charles IC, Mortgages to Secure Future Advances, 34 Tulane Law Review, 807-813 (1959-1960) ; Slovenko, Ralph, Cases and Materials on Louisiana Security Rights— The Law of Debtors and Creditors Rights, pp. 172-173, Chapter 1, Volume 3, Part IV (1962).

. La.Civil Code Article 3305; Flower & King v. O’Bannon, 43 La.Ann. 1041, 1042 (1891).

. Supra, note 5.

. 105 La. 522, 30 So. 5 (1899).

. 7 La.Ann. 297 (1852).

. 168 La. 1057, 123 So. 711 (1929).

. 7 La.Ann. 297 (1852).

. La.C.C. Art. 13.

. 7 La.Ann. 297 (1852).